UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JESSE,

        Plaintiff,

vs.

Case No. 13-CV-11644

HON. GEORGE CARAM STEEH

DICK'S SPORTING GOODS,
INC., a Delaware Corporation, and
FOCALTRON CORPORATION,
a California corporation,

        Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT (DOC. ## 16, 17)

INTRODUCTION

This negligence action stems from an injury to plaintiff Robert Jesse's left eye, caused by a golf ball hit by Jesse in the hitting room at defendant Dick's Sporting Goods (DSG) store in Westland, Michigan.  Now before the court are defendants' motions for summary judgment.  As set forth below, the motions are granted.

BACKGROUND

There appears to be no material dispute over the facts leading up to the contact between the golf ball and Robert Jesse's eye; as described by plaintiff:

> On or about August 18, 2011, the Plaintiff and his uncle, Doug Jesse, were shopping for golf clubs at DSG when approached by DSG's employee Curtis Ebbitt.  Mr. Ebbitt offered the Plaintiff the opportunity to swing the golf clubs on a trial basis in the stores (sic) hitting room (a room near the golf department in DSG that allows customers to swing golf clubs).  Mr. Ebbitt unlocked the hitting room and allowed the Plaintiff, his uncle and Mr. Ebbitt to all enter the hitting room.  The Plaintiff handed Mr.

-1-

> Ebbitt the clubs he wanted to try and Mr. Ebbitt left the hitting room to remove the security tag and place tape over the head of the golf club.[1]
>
> Mr. Ebbitt then returned with the golf club and handed it to the Plaintiff to swing on a trial basis. Mr. Ebbitt and Doug Jesse then left the hitting room. The Plaintiff placed a golf ball on the golf mat which is part of the equipment, along with the Golf Achiever II (a laser measuring device that the golf ball travels through after being hit, see Exhibit A, Kevin Purdy deposition held on December 20, 2013, p. 12) that was manufactured by Co-Defendant Focaltron Corporation (Focaltron), and installed at the DSG store.

Plaintiff's Brf. at 5.

Plaintiff struck the golf ball with his selected club, following which he suffered a serious injury to his left eye. Plaintiff came out of the hitting room with a napkin to his eye, which was bleeding. Plaintiff alleges it was the golf ball which ricocheted against something in the room and returned to strike him in the eye. He alleges severe and permanent injuries to his left eye, including the eye remaining bloodshot as well as issues with depth perception, blurry vision, glaucoma, lazy eye/eyelid, and cataracts. Plaintiff states that he still administers eye drops to control the injuries.[2] He states that he "was a healthy young man with no vision problems until he swung a golf club at DSG. The Plaintiff walked into the hitting room with perfect vision and after being struck in the eye by a golf ball, came out with a lifetime of vision problems." Id. at 6.

---

[1] The taping is done to protect the club, so it does not have any marking from the testing. Plaintiff's complaint appeared to suggest a potential problem with the taping, but he makes no such argument in his response brief, and there is no evidence concerning any causation related to the protective taping.

[2] Plaintiff also argues that the vision problems will likely affect his ability to remain in his field of employment with the forestry service, as his vision problems may affect his ability to climb trees and keep his Commercial Driver License, which he uses in the course of his employment.

Plaintiff filed this lawsuit in state court, alleging two counts against both defendants: Negligence (Count I) and Negligent Infliction of Emotional Distress (Count II). The case was removed to this court on the basis of diversity of citizenship. Defendants have each filed motions for summary judgment. Oral argument was held on the motions March 31, 2014. The court's determination on the motions is set forth below.

## STANDARD

The entry of summary judgment is appropriate when the record demonstrates that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Sadie v. City of Cleveland, 718 F.3d 596, 599 (6th Cir. 2013).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)

(emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

### Causation

To establish negligence, plaintiff must establish the existence of a legal duty owed to plaintiff by defendant, a breach of the duty, resulting damages, and proximate cause.  See Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C., 489 Mich. 157, 809 N.W.2d 553, 556 (Mich. 2011).  DSG, citing Dembinski v. Miller, 345 N.W.2d 626 (Mich. App. 1983), asserts that the "fact of an 'injury alone will never support a recovery in negligence.'" Id. at 627.  DSG argues that plaintiff has not come forward with even a *theory* of causation, let alone any actual evidence concerning how the incident injuring his left eye occurred, and thus that it cannot possibly face any liability here.  DSG points to the testimony of plaintiff, plaintiff's uncle, and the DSG employees present that day, none of which provides anything remotely concrete about how the injury occurred.  For

instance, in deposition, plaintiff "didn't know" if anything was wrong with the driver, what caused the ball to come back and hit him in the eye, what the ball hit in the room, if anything, or even whether he may have topped the ball, causing it to come back and hit him in the eye.  Neither plaintiff nor his uncle, who was not in the room, heard the ball hit anything after it was hit by the golf club.  Likewise, the sales associate did not hear the ball strike anything.  Furthermore, plaintiff has presented no evidence giving rise to permissible inferences of negligence by either defendant.  There are a multitude of possibilities to explain how the hitting room or equipment might have contributed to plaintiff's injuries, but none more likely than the others.

DSG asserts that without any such information (what caused the ball to come back, what the ball hit, etc.), the required "cause-in-fact" prong of proximate cause is impossible.  DSG quotes from Badalamenti v. William Beaumont Hospital, 237 Mich. App. 278, 285, 602 N.W.2d 854 (1999) (quoting Skinner v. Square D Company, 445 Mich. 153, 162-63, 516 N.W.2d 475 (1994)): "the plaintiff must present *substantial evidence* from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred" (emphasis in original).  Defendant Focaltron similarly argues that plaintiff has absolutely no evidence regarding causation, and his mere speculation that the ball may have hit its equipment and come back to injure him is simply not enough to survive its motion.[3]

---

[3] Folcatron also cites to the deposition testimony of its employee, Kevin Purdy, about the fact that it was not involved in the set up of its equipment at the Westland DSG. However, the speculative nature of plaintiff's case, where plaintiff has no information about whether or not the golf ball hit the Folcatron Golf Achiever II (which plaintiff was not using at the time he swung the club), does not require the court's consideration of this evidence.

In response, plaintiff cites Kroll v. Katz, 374 Mich. 364, 132 N.W.2d 27 (1965), and asserts that DSG owed a duty to plaintiff, as a business invitee, to maintain the premises in a reasonably safe condition, to warn him of any known dangers, and to inspect the premises for possible dangerous conditions. Kroll, 374 Mich. at 371 (citing Blakely v. White Star Line, 154 Mich. 635, 118 N.W. 482, 483 (1908)). Plaintiff contends that by allowing its customers to hit golf balls in an enclosed area, DSG should have foreseen that they could ricochet and cause harm to customers. The circumstances present here, plaintiff argues (i.e., that plaintiff walked in the room uninjured and walked out "with a lifetime of vision problems"), are themselves sufficient to support his claim that DSG breached its duty to plaintiff, by failing to provide a certain standard of care and protect against unreasonable risks.

Plaintiff highlights testimony of Curtis Ebbitt, in which Ebbitt recounted a conversation he had with the DSG shop golf pro, Tim Strickland:

> Q. Are there any facts that you're aware of, Mr. Ebbitt, that we haven't discussed already in terms of how this incident occurred or Mr. Jesse's injuries that you'd like to tell us now?
> A. The golf pro, Tim Strickland, had speculated that...okay. So Tim Strickland had, continuing with the statement I was about to say?
> Q. Yes. Go ahead.
> A. Okay. That the sensor had, the sensor machine to track the trajectory had a slight lip above the tee pad, which, again speculation, if the ball is hit directly into the sensor, that it could have shot back towards the person hitting the ball.
> Q. So you had a conversation with Tim Strickland at some point after this incident?
> A. Yep. Yes.
> Q. Okay. And, okay, so Tim Strickland said that the golf sensor machine had a slight lip on it and that if a ball was hit right, it could bounce off or that and strike somebody?
> A. Yes.

Deposition of Curtis Ebbitt, pp. 25-26.  Plaintiff points to additional testimony of Curtis Ebbitt concerning other items in the hitting room that a golf ball might have struck:

> Q. Would you agree with me that there were a number of items, let's say, in the room, in the hitting room, on the day of this incident, that a golf ball could have struck and come back?
> A. If a ball was struck poorly, yes.
> Q. So in addition to Mr. Strickland's speculation that it could have hit let's say the laser bar, there were other items inside that room that, if the ball was hit poorly, it could have come back towards the person hitting it; correct?
> A. Theoretically, yes.

Id.

As defendants argue in reply, plaintiff simply has not produced evidence in this case to demonstrate negligence as to either one.  Setting aside the obvious obstacles posed by the hearsay rule and the absence of foundation for the admission of lay witness opinion testimony that plaintiff faces in attempting to use this evidence, it remains that all plaintiff has is speculation, and no opinion–expert or otherwise–to support his case.  Ironically, the weakness of plaintiff's case is highlighted by his own argument.

In arguing that his case is proven through circumstantial evidence, plaintiff quotes from Gadde v. Michigan Consol. Gas Co., 377 Mich. 117, 121-22, 139 N.W. 2d 722 (quoting Burghardt v. Detroit United Railway, 206 Mich. 545, 546-47, 173 N.W. 360 (1919)): "'negligence may be established by circumstantial evidence...where the circumstances are such as to take the case out of the *realm of conjecture* and within the *field of legitimate inferences* from established facts, that at least a prima facie case is made'" (emphasis added).  Despite plaintiff's assertions that sufficient circumstantial evidence exists for his case, he ultimately cannot disguise the fact that he is actually

-7-

urging the court to apply the doctrine of *res ipsa loquitur* to his case. However, as stated in the very case relied on by plaintiff for the opposite proposition, "the happening of the accident alone is not evidence of negligence." Gadde, 377 Mich. at 121. Stated another way, evidence of a bad result, in itself, is insufficient to prevail under this theory. See Wischmeyer v. Schanz, 449 Mich. 469, 484, 536 N.W.2d 760 (1995).

In short, plaintiff asserts only that the ball hit *either* defendant Focaltron's equipment *or* something placed in the room at DSG (or the wall of the hitting room itself), and cannot even rule out a freak ball topping incident. This kind of alternative liability argument (if not x, then y) simply is not enough to create liability on the part of either defendant. Thus, this case has not moved from the "realm of conjecture" into a "field of legitimate inferences," and plaintiff's speculation is simply not enough to allow him to survive defendants' motions on the issue of negligence.

Negligent Infliction of Emotional Distress

Defendant DSG argues that this claim is "specious," as this cause of action in Michigan is for a situation where a bystander witnesses negligent injury to a close relation, and suffers severe mental distress as a result. See Taylor v. Kurapati, 236 Mich. App. 315, 360, 600 N.W. 2d 670 (1999). In response, plaintiff argues that *direct* victims of negligence may also advance negligent infliction of emotional distress claims, citing Daley v. La Croix, 384 Mich. 4, 12-14, 179 N.W.2d 390 (1970), holding

> that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

Daley, 384 Mich. at 12-13.

Whether or not such a claim is only for bystanders, the parties' authorities make clear that a "negligent infliction of emotional distress" claim is clearly applicable only under circumstances where the plaintiff suffers no physical impact, but incurs injury through acute emotional disturbance. Id.

Accordingly, an injured plaintiff such as Jesse asserting a negligence claim has no separate claim for "negligent infliction," because the emotional distress suffered by Jesse is part and parcel of the injury to his eye. And, in any event, the causation requirement is just as much a part of a "negligent infliction of emotional distress" cause of action as for negligence. Id. at 14-15. The lack of such evidence is fatal to this case, as described above.

## CONCLUSION

For the reasons given above, the court hereby **GRANTS** defendants' motions for summary judgment. Judgment will enter for defendants.

**IT IS SO ORDERED**.

Dated: April 2, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 2, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk